UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-CR-20661-HUCK/MCALILEY

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JORGE BONILLA MESA,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

Defendant, Jorge Bonilla Mesa, is serving a sentence of 20 years' imprisonment at the Moshannon Valley Correctional Institute in Philipsburg, Pennsylvania, after having been convicted in this Court of felony offenses. Defendant has filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),[1] which the Honorable Paul C. Huck referred to me for a report and recommendation. (ECF No. 220-2, 224). Defendant states that he has asthma and one kidney and that this places him at heightened risk of severe illness from COVID-19. He asserts that these are "extraordinary and compelling reasons" that justify his release. (ECF No. 220-2). The government filed a response. (ECF No. 228). Having carefully considered the Motion, Response, the record in this case and the applicable law, I recommend that the Court deny the Motion.

---

[1] Defendant also filed a Motion to Appoint Counsel. (ECF No. 221). By separate order, I denied that Motion because it is clear that Defendant's motion for compassionate release is without merit. (*See* ECF No. 232).

## I.  BACKGROUND

On October 13, 2010, Defendant plead guilty to the following crimes: (i) conspiracy and attempt to possess with intent to distribute five kilograms or more of cocaine (Counts 1 and 2); (ii) conspiracy and attempt to interfere with interstate commerce by robbery (Counts 3 and 4); and (iii) carrying a firearm during and relation to a drug crime (Count 5). (ECF No. 26, 59). According to his Presentence Investigation Report ("PSR"), there are audio and video recordings of Defendant planning the robbery of a home he believed contained 14 kilograms of cocaine. (*See* PSI at ¶ 30). In recorded meetings with an undercover officer, Defendant stated that he would kill any occupants in the house who might be guarding the cocaine and offered to provide his bullet proof vest to a co-conspirator who planned to enter the house first. (*Id*.at ¶ 6). When a confidential informant expressed concerns about killing anyone during the robbery, Defendant responded that he would do whatever was necessary to steal the cocaine. (*Id*). Defendant drove a vehicle to the planned robbery site where he was arrested with his co-conspirators. (*Id*. at ¶¶ 11, 30).

On December 22, 2010, the Court sentenced Defendant to a mandatory minimum ten-year term of imprisonment for the drug and robbery offenses, followed by a consecutive ten-year mandatory minimum term of imprisonment for the firearm offense. (ECF No. 98). To date, Defendant has served nearly half of his sentence of imprisonment. Defendant asserts that he has not had any disciplinary infractions while in prison, (ECF No. 220-2 at 1), which the government does not dispute. Defendant's current release date is October 14, 2027.

In his Motion for Compassionate Release, Defendant asserts that he is at heighted risk of becoming seriously ill from COVID-19 because of his age and pre-existing health conditions. (ECF No. 220-2). Defendant is 33 years old. One of his kidneys was removed when he was a child, and Defendant states that he suffers from asthma. (*Id*. at 5). Defendant submitted letters from the mother of his child, and his own mother, in support of his assertion that he suffers from severe asthma, and they advise that they will provide Defendant a strong support system if he is released. (ECF Nos. 220-1 at 1-2). Defendant asks the Court to immediately release him or, alternatively, to place him on home confinement, because COVID-19 poses a threat to his health that amounts to an "extraordinary and compelling" reason within the meaning of § 3582(c)(1)(A)(i).

I conclude that the Court should deny the Motion because Defendant has not exhausted his administrative remedies and, even if the Court does reach the merits of the Motion, Defendant has not shown that an extraordinary and compelling reason warrants his release.

## II.    ANALYSIS

Defendant relies upon the First Step Act's compassionate release provision, 18 U.S.C. § 3582(c)(1)(A)(i), to ask the Court to modify his sentence of imprisonment to time served. "Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)). However, 18 U.S.C. § 3582(c) authorizes courts to reduce a term of imprisonment on a motion from a defendant

> after the defendant has fully exhausted all administrative rights to appeal a
> failure of the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier... after considering the factors
> set forth in section 3553(a) to the extent they are applicable, if it finds that
> … extraordinary and compelling reasons warrant such a reduction…and that
> such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define extraordinary and compelling reasons, other than to state that rehabilitation of the defendant alone is not an extraordinary and compelling reason. 28 U.S.C. § 994(t). It did instruct the Sentencing Commission to promulgate "criteria to be applied and a list of specific examples" of extraordinary and compelling reasons. *Id*.

The relevant Sentencing Guidelines policy statement ("Policy Statement") reiterates some of these statutory provisions, and adds a condition that a Court may reduce a sentence only where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). In addition, in its Application Note 1, the Sentencing Commission provides defines four categories of extraordinary and compelling circumstances. (*Id.*)

The statute and the Policy Statement, read together, provide that a court can grant relief under Section 3582(c)(1)(A) if it: (1) finds the defendant exhausted his administrative remedies, (2) concludes that extraordinary and compelling reasons warrant release, (3) determines that the defendant is not a danger to the community, and (4) finds that the relevant § 3553(a) factors support a reduction of sentence. The defendant bears the burden

4

of establishing that compassionate release is warranted. In the end, whether the Court grants compassionate release is within its discretion, as section 3582(c)(1)(A) uses the word may, not must. *United States v. Israel*, No. 05 CR 103 (CM), 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019).

A. <u>Defendant Failed to Exhaust Administrative Remedies</u>

The Bureau of Prisons ("BOP") established an Administrative Remedy Program through which any inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542.10 *et seq.* The Eleventh Circuit Court of Appeals summarized that program as follows:

> The Administrative Remedy Program requires a prisoner to first file a grievance (a BP-9) with the warden of the prison within 20 calendar days from the date on which the basis of the incident occurred. If the inmate is dissatisfied with the warden's response, he may then appeal (a BP-10) to the Regional Director within 20 calendar days from the date of that response. Finally, if the inmate is dissatisfied with the Regional Director's response, he may appeal (a BP-11) to the General Counsel within 30 days of that response.

*Forde v. Miami Federal Department of Corrections*, 730 Fed. App'x 794, 798 (11th Cir. 2018) (quotation marks omitted) (citing Federal Bureau of Prisons Inmate Admission & Orientation Handbook at 41; 28 C.F.R. § 542.14(a)-542.15(a)). An appeal to the BOP's Office of General Counsel is the last step in the BOP's administrative remedy process. 28 C.F.R. 542.15(a).

Defendant concedes that he has not exhausted his administrative remedies,[2] and asks

---

[2] The government reports that on or about June 10, 2020, Defendant submitted an incomplete

the Court to waive this requirement because "adhering to the 30-day exhaustion of remedies requirement would create a dangerous delay in time." (ECF No. 220-2 at 3). I do not believe this Court has the authority to excuse an inmate from meeting the administrative remedy exhaustion requirement.

The Eleventh Circuit recently indicated that a court cannot excuse the failure to exhaust administrative remedies where exhaustion is statutorily required, even in light of the COVID-19 pandemic. In *Swain v. Junior*, the Eleventh Circuit reversed imposition of a preliminary injunction which mandated that Miami-Dade County and the Director of the Miami-Dade Corrections and Rehabilitations Department take certain safety measures to prevent the spread of COVID-19. *Swain*, 958 F.3d 1081, 1085 (11th Cir. 2020). *Swain* involved a claim brought under the Prison Litigation Reform Act ("PLRA") which, like the First Step Act, requires exhaustion of administrative remedies. The PLRA's exhaustion provision states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Eleventh Circuit said the district court erred when it did not address PLRA exhaustion requirement, stating that "[s]o long as those [administrative] remedies are 'available' to the prisoner, a court may not excuse a failure to exhaust, even to take special circumstances into account." *Swain*, 958 F.3d at 1092

---

request for compassionate release to officials at his facility, which was returned to him with an instruction to resubmit a complete request. (ECF No. 228 at 3). There is no evidence in the record that Defendant did so.

(quotation marks and citation omitted).

The reasoning in *Swain* is consistent with decisions of the Supreme Court and the Eleventh Circuit which, in the context of statutes other than the First Step Act, recognized the distinction between judge-made and statutory exhaustion requirements. The Supreme Court has found that "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (*superseded in part by statute on other grounds*, Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e)). The Eleventh Circuit stated that "[a]lthough judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts." *Richardson v. Reno,* 162 F.3d 1338, 1374 (11th Cir.1998), *judgment vacated on other grounds,* 526 U.S. 1142 (1999).

Regarding the First Step Act, courts around the country are divided about whether they can excuse its exhaustion requirement. Two Circuit Courts of Appeals have concluded that the COVID-19 pandemic does not justify excusal of the exhaustion requirement in § 3582(c)(1)(A).

The Third Circuit, in *United States v. Raia,* considered an inmate's compassionate release motion that alleged that he "faces heightened risk of serious illness or death from the virus since he is sixty-eight years old and suffers from Parkinson's Disease, diabetes, and heart issues." *Raia*, 954 F.3d 594, 596 (3d Cir. 2020). The inmate filed his motion without giving the Bureau of Prisons thirty days to consider his request that it file a motion on his behalf for compassionate release, as required by § 3582(c)(1)(A). *Id*. at 597. The

Third Circuit denied the motion outright for failure to exhaust administrative remedies with this explanation:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.

*Id.* The Court concluded that "[g]iven BOP's shared desire for a safe and healthy prison environment…*strict compliance* with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id*. (emphasis added).

The Sixth Circuit reached the same conclusion when it held that an inmate's failure to exhaust administrative remedies required dismissal of his compassionate release claim without prejudice, because the requirement is "mandatory…[and] we must enforce it." *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020).

A number of district courts within and outside this Circuit have similarly declined to find that § 3582(c)(1)(A)'s exhaustion requirement can be waived during the COVID-19 pandemic. *See e.g., United States v. Christian*, No. 9:16-CR-80107, 2020 WL 2513101, at *3 (S.D. Fla. May 15, 2020); *United States v. Kranz*, No. 2:18-CR-14016, 2020 WL 2559551, at *3 (S.D. Fla. May 20, 2020); *United States v. Wojt*, No. 8:18-cr-00417-T-02AEP, 2020 WL 3128867, at *1 (M.D. Fla. June 12, 2020) (recognizing that courts in the Middle District of Florida have "consistently held" that the administrative exhaustion requirement in § 3582(c)(1)(A) may not be waived despite the "unique circumstances of

COVID-19"); *United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at * 2 (W.D. Wash. April 13, 2020) (collecting cases); *United States v. Gillis*, No. 14-cr-00712, 2020 WL 1846792, at *2 (C.D. Cal. April 9, 2020) (collecting cases cases); *United States v. Holden*, No. 3:13-cr-00444, 2020 WL 1673440, at *7-9 (D. Or. April 6, 2020) (collecting cases). These courts focus upon the fact that § 3582(c)(1)(A) is a "statutory exhaustion provision" rather than a "judge-made exhaustion doctrine," and thus, "the FSA [First Step Act] does not provide this Court with the authority to excuse Defendant's failure to exhaust his administrative remedies or to waive the 30-day waiting period." *Holden*, 2020 WL 1673440 at *7 (citations omitted); *see also Christian*, 2020 WL 2513101 at *1-2.

By contrast, some district courts, most notably in the Second Circuit, have held that a prisoner's "exhaustion of the administrative process [in § 3582(c)(1)(A)] can be waived in light of the extraordinary threat posed – in [the prisoner's] unique circumstances – by the COVID-19 pandemic." *United States v. Zuckerman*, No. 16 Cr. 194 AT), 2020 WL 1659880, at *2 (S.D.N.Y. April 3, 2020); *see also e.g., United States* v. *Colvin*, No. 3:19cr179, 2020 WL 1613943, at *2 (D. Conn. April 2, 2020) (collecting cases). At least two divisions of this Court have similarly held. *See United States v. Feucht*, No. 11-CR-60025, 2020 WL 2781600, at *2-3 (S.D. Fla. May 28, 2020) (finding that "given this unprecedented virus, it would unduly prejudice the Defendant to require him to exhaust administrative remedies."); *U.S. v. Nieves Suarez*, Case No. 18-20175-CR-COOKE, ECF No. 180.[3] Those courts rely upon a Second Circuit decision, *Washington v. Barr*, 925 F.3d

---

[3] The Court reached this conclusion, relying upon *United States v. Haney*, 19-CR-541 (JSR), 2020 WL 1821988 (S.D.N.Y. April 13, 2020), which in turn relied, in part, on *Washington v. Barr*.

109, 118 (2d Cir. 2019), which recognized exceptions to the exhaustion of administrative remedies where the claim was brought under the Controlled Substances Act which, unlike the First Step Act, does not itself mandate exhaustion of administrative remedies. *Washington,* 925 F.3d at 115-16, 119 ("The exhaustion requirement under the CSA is . . . not mandated by the statute. Rather, it is a judicially-created administrative rule, applied by courts in their discretion.").

My careful review of this precedent leads me to conclude that this Court lacks the authority to excuse Defendant's noncompliance with the administrative exhaustion provision of § 3582(c)(1)(A), because Congress mandated exhaustion, without exception.

I reach this conclusion fully aware of the gravity of the COVID-19 pandemic, and the particular vulnerability of inmates in confinement to possible serious illness. I believe "[t]he Court's hands are bound by the statute" and that only Congress can decide to relieve inmates of the exhaustion requirement. *United States v. Carver*, No. 4:19-cr-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. April 1, 2020). This reasoning leads me to recommend that the Court deny Defendant's Motion, because he failed to exhaust administrative remedies.

Although this is full reason to deny the Motion, I nonetheless consider the merits of Defendant's claim that he merits compassionate release.

B.  Defendant Has Not Demonstrated an Extraordinary and Compelling Reason

Application Note 1 to the Policy Statement defined four circumstances that amount to extraordinary and compelling reasons for a modification of sentence. The first is "**Medical Condition of the Defendant**", which is satisfied where "(i) [t]he defendant is

suffering from a terminal illness…" or "(ii) [t]he defendant is suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. Sentencing Guidelines Manual § 1B1.13 Application Note 1(**A**).

The second category, "**Age of the Defendant**", is satisfied if the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. § 1B1.13 Application Note 1(**B**).

The third category, "**Family Circumstances**", occurs upon "(i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children [or] (ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id*. § 1B1.13 Application Note 1(**C**).

The last is a catch-all category, "**Other Reasons**", which states that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. § 1B1.13 Application Note 1(**D**). [4]

---

[4] "Some courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release *exist other than those delineated in U.S.S.G. § 1B1.13 n.1*." *United States v. Winner*, No. CR117-034, 2020 WL 2124594, at *2 (S.D. Ga. April 24, 2020) (citing cases) (emphasis added). Other courts continue to limit their analysis to the three specific categories set forth in the Application Note, reasoning that "Congress directed the [Sentencing] Commission to 'describe

Only the first category may apply here, Medical Condition of the Defendant.[5] Defendant states that he suffers from asthma and has only one kidney. To meet the criteria, Defendant must demonstrate that these are "a serious physical or medical condition" that "substantially diminishes [his] ability … to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 Application Note 1(A). As for asthma, the record before this Court is not clear that Defendant, in fact, suffers from it. Further, it does not make clear that the condition is serious. Additionally, Defendant has not shown that asthma, or his having one kidney, "substantially diminishes" his ability to "provide self-care" within the correctional facility environment. *Id.*

The only reference to asthma in Defendant's Bureau of Prisons medical records is a dental health record dated February 26, 2020 containing a checkmark next to "Asthma/Respiratory Problems" in the "Dental/Medical History" section.[6] (ECF No. 229-

---

what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples.'" *United States v. Lynn*, Case No. 89-0072-WS, 2019 WL 3805349, at *3 (S.D. Ala. Aug. 13, 2019) (quoting 28 U.S.C. § 944(t)). These courts note that Section 3582(c)(1)(A) "as amended by the First Step Act *still* requires courts to abide by 'applicable policy statements issued by the Sentencing Commission.'" *Winner*, 2020 WL 2124594 at *2 (emphasis in original) (quoting § 3582(c)(1)(A). I find this reasoning most persuasive and limit my evaluation of extraordinary and compelling reasons to the subsections (A) through (C) set forth in Application Note 1. It makes most sense to me that if the policy statement "needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts." *Lynn*, 2019 WL 3805349 at *4.

[5] Defendant does not assert that he suffers from a terminal illness, so this part of the Medical Condition category does not apply.

[6] Defendant's medical records are filed under seal pursuant to this Court's Order. (*See* ECF No. 230).

12

1 at 89). None of Defendant's other medical records contain a reference to asthma, including those listing his current health conditions and those specifically asking if he now, or in the last five years, was treated by a doctor or hospitalized for asthma. (*Id*. at 18, 23, 37, 47, 61, 90). Nor do Defendant's medical records indicate that he has been prescribed any medication for asthma. The Motion itself is silent regarding any details of Defendant's alleged asthma, such as its severity, how long he has had the condition, and what treatment, if any, he uses to manage it. For these reasons, I conclude that Defendant does not adequately support his claim that he has asthma.

Defendant's medical records confirm that he has one kidney. (ECF No. 229-1 at 18, 23, 37). There is no evidence, however, that this condition, or his alleged asthma, is a "serious" medical condition that limits his ability to independently care for himself in confinement. In fact, Defendant's medical records indicate otherwise, as they show that Defendant is active and plays softball in prison.  (*Id*. at 7, 9). The absence of evidence that Defendant suffers from serious medical conditions that "substantially diminish[]" his ability "to provide self-care" leads me to conclude that Defendant fails to establish that he has a qualifying medical condition within the meaning of Application Note 1(A). *See e.g., United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D.  Fla. June 7, 2019) ("Without his medical provider corroborating either of these requirements [that the defendant has a serious medical condition, and that it substantially diminishes his ability to provide self-care, defendant] has not shown a foundation for compassionate release based on his medical condition.").

13

The fact of the COVID-19 pandemic does not change my conclusion. I understand that the close quarters of confinement cause prison inmates to be especially vulnerable to exposure to the novel coronavirus. However, the Centers for Disease Control and Prevention has not identified having one kidney as a risk factor for severe illness from COVID-19, and Defendant's young age makes it more likely that he will not become seriously ill from the virus.[7] *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, updated May 14, 2020 at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed July 17, 2020). While moderate to severe asthma is identified as a risk factor for people of all ages, (*id.*), as noted, Defendant has not demonstrated that he suffers from this condition.

For these reasons, I conclude that Defendant has not established that an extraordinary and compelling reason, as set forth in 28 U.S.C. §3582(c)(1)(A)(i), warrants his release.

### C.   Defendant's Request for Home Confinement

Defendant asks, in the alternative, that the Court place him on home confinement for the remainder of his sentence. The Court has no authority to order this relief. "A sentencing court can recommend that the BOP place an offender in a particular facility or

---

[7] CDC guidelines do state that people of any age who have chronic kidney disease are at increased risk for severe outcomes from COVID-19, but there is no contention - or evidence - that Defendant suffers from this condition. *See* Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, updated May 14, 2020 at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed July 17, 2020).

14

program…[b]ut decision making authority rests with the BOP." *Tapia v. United States*, 564 U.S. 319, 331 (2011); 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of a prisoner's imprisonment."). "[A] district court's recommendation to the [BOP] is just that – a recommendation." *United States v. Cebellos*, 671 F.3d 852, 855 (9th Cir. 2011). This recommendation "shall have no binding effect on the authority of the Bureau ... to determine or change the place of imprisonment of that person." 18 U.S.C. § 3621(b). I do not believe this record supports the Court recommending to BOP that it place Defendant on home confinement.[8]

## III.     RECOMMENDATION

For the foregoing reasons, I respectfully recommend that the Court **DENY** Defendant's Motion for Compassionate Release, (ECF Nos. 220, 220-2).

## IV.     OBJECTIONS

**No later than fourteen (14) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Paul C. Huck. Judge Huck is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed

---

[8] I note that, if the Court were to reduce Defendant's sentence on compassionate release grounds, it could "impose a term of…supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). As a condition of such supervised release, the Court could impose a period of home confinement, provided that it finds that home confinement is a "substitute for imprisonment." U.S.S.G. § 5F1.2; 18 U.S.C. § 3583(e)(2). This does not apply here because Defendant has not established that compassionate release is warranted.

on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), 28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b), 11th Cir. R. 3-1 (2016).

     **RESPECTFULLY RECOMMENDED** this 17th day of July 2020, at Miami, Florida.

                                      CHRIS MCALILEY
                                      UNITED STATES MAGISTRATE JUDGE

cc: Honorable Paul C. Huck
    Counsel of Record
    Jorge Bonilla Mesa